IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AT&T CORP.,<br>One AT&T Way<br>Bedminster, New Jersey 07921<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL RAILROAD PASSENGER<br>CORPORATION,<br>60 Massachusetts Avenue, N.E.<br>Washington, D.C. 20002<br><br>Defendant. | Civil Action No. |

**PLAINTIFF AT&T CORP.'S VERIFIED COMPLAINT FOR DECLARATORY
JUDGMENT AND EQUITABLE RELIEF AGAINST DEFENDANT
NATIONAL RAILROAD PASSENGER CORPORATION**

Plaintiff AT&T Corp. ("AT&T"), by and through its undersigned counsel, brings this Verified Complaint for Declaratory Judgment and Equitable Relief against Defendant National Railroad Passenger Corporation ("Amtrak"). In support thereof, AT&T hereby avers as follows:

### INTRODUCTION

1. AT&T brings this Verified Complaint for Declaratory Judgment and Equitable Relief to protect its interests under a Lease Agreement entered into between AT&T and Amtrak through which AT&T constructed a fiber optic communications system along Amtrak's right-of-way between Washington, DC and Philadelphia, Pennsylvania. AT&T has maintained and operated the system for the past twenty years. As was AT&T's right under the Lease Agreement, on May 18, 2005, AT&T sent to Amtrak a notice to renew the Lease Agreement,

more than seven weeks before the renewal deadline set forth in the Lease Agreement. However, Amtrak did not receive the notice until after the deadline because Amtrak failed to advise AT&T – as Amtrak was contractually obligated to do – that the notice address in the Lease Agreement was no longer valid. Amtrak disputes the validity of AT&T's renewal claim and has demanded that AT&T remove its equipment and vacate the leased premises as of January 1, 2006. As provided in the Lease Agreement, AT&T has initiated an arbitration proceeding, which is currently pending. In light of the harm that would result from AT&T's eviction, Amtrak's potential lease of the leased premises to another entity, and the short period of time prior to the expiration of the Lease Agreement, AT&T also seeks a declaratory judgment from this Court that the dispute is arbitrable and that Amtrak should be prohibited from interfering with AT&T's continued occupancy and use of the leased premises pending the conclusion of the arbitration.

## PARTIES

2. Plaintiff AT&T is a New York corporation with its principal place of business in New Jersey.

3. Defendant Amtrak is a corporation created by the United States Congress pursuant to the Rail Passenger Service Act of 1970 and organized under the laws of the District of Columbia. Pursuant to 49 U.S.C. § 24301(b), Amtrak maintains its principal place of business in the District of Columbia.

## JURISDICTION

4. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1349.

5. This Court also has jurisdiction to award declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

6. Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391(a) because Amtrak is a resident of this judicial district.

## FACTUAL BACKGROUND

A. **The Lease Agreement.**

7. On or about December 31, 1985, AT&T and Amtrak entered into a lease agreement (the "Lease Agreement") whereby Amtrak leased approximately 137 miles of railroad right-of-way between Union Station in Washington, DC and 30th Street Station in Philadelphia, Pennsylvania to AT&T for the construction and operation of a fiber optic communication system. A true and correct copy of the Lease Agreement is attached hereto as Exhibit "A."

8. In exchange for the leased premises, AT&T agreed to pay a one-time rental fee. Exhibit "A," Section 3.1.

9. The Lease Agreement provided that the initial term terminates at 12:01 a.m. on January 1, 2006, "unless this Agreement is renewed pursuant to the renewal provisions" in the Lease Agreement. Exhibit "A," Section 2.1.

10. The Lease Agreement granted AT&T two options to renew and extend the Lease Agreement for two "Renewal Terms" of twenty (20) years each. Exhibit "A," Section 2.2.

11. Section 2.2 of the Lease Agreement governs the procedure for renewal of the Lease Agreement. Section 2.2 states in relevant part:

> Each option shall be exercisable by Lessee giving written notice of renewal to Lessor no fewer than one hundred and eighty (180) days prior to expiration of the Initial Term and of the first Renewal Term, as the case may be.

Exhibit "A," Section 2.2.

12. Thus, pursuant to Section 2.2 of the Lease Agreement, AT&T's deadline to

provide Amtrak notice of its renewal of the Lease Agreement at the address specified in Section 14.1 (the "Notice Address") was July 5, 2005.

13. In the Lease Agreement, the parties also agreed to identify specific addresses where notices must be sent. Section 14.1 of the Lease Agreement states in relevant part:

> All notices, demands, requests, or other communications which may be or are required to be given, served, or sent by one party to the other party pursuant to this Agreement (except as otherwise specifically provided in this Agreement) shall be in writing and shall be hand-delivered or mailed by first-class, certified mail, postage prepaid, or by telex or telecopier transmissions confirmed promptly in writing by first-class, postage prepaid mail, addressed as follows:
>
> (a)  If to Lessor:
> Assistant Vice President
> Corporate Development
> National Railroad Passenger Corporation
> 400 North Capitol Street, N.W.
> Washington, D.C. 20001

Exhibit "A," Section 14.1.

14. Significantly, Section 14.2 requires that in the event either party wishes to designate a new notice address, they must "designate in writing a new representative or address to which any notice, demand, request or communication made thereafter shall be so given, served or sent." Exhibit "A," Section 14.2.

15. Therefore, Amtrak had an obligation under the Lease Agreement to advise AT&T in writing in the event that Amtrak's notice address changed.

16. AT&T and Amtrak have had a long course of dealings concerning these right-of-way agreements and the importance of this particular right-of-way to AT&T's fiber optic communication system. On information and belief, Amtrak also knew the importance of this AT&T communication system and AT&T's intent to renew the Lease Agreement since AT&T

4

had had no discussions with Amtrak regarding plans, post-termination, to remove AT&T's facilities, which would be required under the Lease Agreement.

**B.      AT&T's Efforts To Renew The Lease Agreement.**

17.     On May 18, 2005, approximately seven weeks before AT&T's deadline to renew the Lease Agreement, AT&T sent its notice of renewal ("Renewal Notice") via an overnight carrier, DHL. True and correct copies of the Renewal Notice and DHL airbill are attached hereto as Exhibit "B."

18.     AT&T sent the Renewal Notice to the address set forth in Section 14.1(a) of the Lease Agreement (the "Notice Address").

19.     AT&T sent the Renewal Notice via overnight carrier because Amtrak routinely accepted renewals and other notices sent from AT&T in this manner.

20.     AT&T understood that Amtrak received the Renewal Notice prior to July 5, 2005 since AT&T did not receive any indication to the contrary.

21.     However, on July 26, 2005, Amtrak notified AT&T by letter as to its belief that AT&T had not exercised its option to renew the Lease Agreement and that, accordingly, the Lease Agreement expired on January 1, 2006.

22.     Amtrak also demanded that AT&T remove its facilities and equipment beginning on January 1, 2006.

23.     Unbeknownst to AT&T at that time, Amtrak did not receive the Renewal Notice because Amtrak no longer accepted notices at the Notice Address.

24.     Amtrak never advised AT&T pursuant to Section 14.2 of the Lease Agreement that the Notice Address for this Lease Agreement had changed.

25.     Upon receipt of Amtrak's July 26, 2005 letter, AT&T, after investigating,

promptly contacted Amtrak and informed it that AT&T sent the Renewal Notice on May 18, 2005 to the Notice Address.

26. AT&T also sent Amtrak a copy of the DHL airbill and additional copies of the Renewal Notice by fax and email on August 5, 2005, and August 15, 2005, respectively.

27. It was not until September 14, 2005 that Amtrak provided AT&T with a written explanation that Amtrak did not actually receive the Renewal Notice prior to the renewal deadline and that it was contesting the form and type of notice as well.

28. Notwithstanding this misunderstanding, Amtrak received actual notice of renewal more than four months before the expiration of the initial term of the Lease Agreement.

C. **AT&T's Initiation Of The Arbitration Proceeding.**

29. The Lease Agreement provides that any "dispute arising out of or relating to this Agreement shall be referred to arbitration and the arbitrator's decision shall be final and binding on the parties." Exhibit "A," Section 17.2.

30. By letter dated December 12, 2005, AT&T initiated arbitration proceedings against Amtrak. A true and correct copy of AT&T's December 12, 2005 letter is attached hereto as Exhibit "C."

31. AT&T initiated this action simultaneous with the arbitration proceeding to preserve the status quo, i.e., AT&T's rights to use and occupancy of the corridor under the Lease Agreement, and to ensure that Amtrak takes no action to interfere with AT&T's interests under the Lease Agreement.

## COUNT I – DECLARATORY JUDGMENT FOR EQUITABLE RELIEF

**For Judgment And Equitable Relief That This Dispute Is Arbitrable And Amtrak Is Prohibited From Interfering With AT&T's Continued Occupancy And Use Of Amtrak's Right-of-Way Pending Resolution Of The Arbitration Proceeding.**

32. AT&T hereby incorporates Paragraphs 1 through 31 of this Complaint for Declaratory Judgment and Equitable Relief as though set forth fully herein.

33. Section 17.2 of the Lease Agreement states that "[a]ny dispute arising out of or relating to this Agreement shall be referred to arbitration and the arbitrator's decision shall be final and binding on the parties." Exhibit "A," Section 17.2.

34. AT&T is required to resolve this dispute through arbitration and thus is entitled to have the status quo maintained pending resolution of the arbitration.

35. Amtrak has demanded that AT&T remove its equipment from the right-of-way beginning on January 1, 2006.

36. Amtrak has also advised AT&T that it has had negotiations with another entity regarding the lease of the right-of-way.

37. Thus, while the arbitration is pending, there is a substantial likelihood that Amtrak will lease the premises to another entity or require AT&T to remove its equipment, thereby causing AT&T irrevocable harm.

38. AT&T would suffer irreparable harm if the property that is the subject of the Lease Agreement is transferred during the pendency of the arbitration.

39. Therefore, AT&T is entitled to a declaratory judgment that the Lease Agreement remain in effect pending the outcome of the arbitration proceeding and also prohibiting Amtrak from interfering with AT&T's continued occupancy and use of the right-of-way pending resolution of the arbitration proceeding.

7

WHEREFORE, AT&T respectfully requests that this Court enter a judgment in its favor and against Amtrak declaring that the Lease Agreement remains in effect pending the outcome of the arbitration proceeding and that Amtrak is prohibited from interfering with AT&T's continued occupancy and use of Amtrak's right-of-way while the arbitration proceeding is pending, as well as granting all other such additional relief that this Court deems just and proper.

Respectfully submitted,

BLANK ROME LLP

By: _____
WILLIAM R. MARTIN, D.C. Bar No. 465531
ALAN M. FREEMAN, D.C. Bar No. 454693
600 New Hampshire Avenue, N.W.
Washington, DC 20037
(202) 772-5800
(202) 572-8370 (facsimile)

Of Counsel:

BLANK ROME LLP
Matthew J. Siembieda
Scott E. Coburn
One Logan Square
Philadelphia, PA 19103-6998
(215) 569-5500

Dated: December 12, 2005

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AT&T CORP., | Civil Action No. |
| Plaintiff, | |
| v. | |
| NATIONAL RAILROAD PASSENGER CORPORATION, | |
| Defendant. | |

## VERIFICATION

I, Alvin S. Richardson, in my capacity as Manager – Network Engineering Management, AT&T Corp., verify that the statements made in the foregoing Complaint for Declaratory Judgment and Equitable Relief are true and correct to the best of my knowledge, information, and belief. I understand that any false statements herein are made subject to penalties relating to unsworn falsification to authorities.

*Alvin S. Richardson*
ALVIN S. RICHARDSON

Dated: December 9, 2005

012239.00614/21443525v.2