IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AT&T CORP., | : | Civil Action No. |
| Plaintiff, | : | |
| v. | : | |
| NATIONAL RAILROAD PASSENGER CORPORATION, | : | |
| Defendant. | : | |

**PLAINTIFF AT&T CORP.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Plaintiff, AT&T Corp. ("AT&T"), by and through its undersigned counsel, respectfully files this Memorandum of Law in support of its Motion for Temporary Restraining Order and Preliminary Injunction ("Motion").

I.  **INTRODUCTION**

Simultaneous with the filing of this Motion, AT&T has filed a Verified Complaint for Declaratory Judgment ("Complaint"), in which AT&T asserts that it properly renewed a lease agreement dated December 31, 1985 (the "Lease Agreement") between AT&T and National Railroad Passenger Corporation ("Amtrak"). Under the Lease Agreement, AT&T leased from Amtrak approximately 137 miles of railroad right-of-way between Washington, DC and Philadelphia, Pennsylvania for the construction and operation of a fiber optic communication system. AT&T spent significant resources in developing, maintaining and operating the system during the past twenty years.

The initial term of the Lease Agreement expires on January 1, 2006. Under the terms of the Lease Agreement, AT&T possesses an option to renew the Lease Agreement, by notice of

renewal on or before July 5, 2005 at the notice address specified in the Lease Agreement. On May 18, 2005, more than seven weeks before the renewal deadline, AT&T sent Amtrak a notice of renewal to the notice address specified in the Lease Agreement. However, Amtrak did not receive AT&T's notice prior to the renewal deadline because Amtrak no longer maintains offices or accepts notices at the address identified in the Lease Agreement. Amtrak failed to advise AT&T of these crucial facts, despite Amtrak's contractual obligation to do so. Because Amtrak failed to comply with its contractual obligations, AT&T never had any indication that Amtrak did not receive the notice prior to the renewal deadline. Amtrak has demanded that AT&T remove its equipment and vacate the leased premises immediately upon the expiration of the initial lease term (January 1, 2006) and has indicated that it has engaged in negotiations for the lease of the premises to another entity, even though Amtrak had actual knowledge of AT&T's notice of renewal more than four months before the termination of the initial lease term.

Because the Lease Agreement provides for the parties to submit to binding arbitration for all disputes relating to the Lease Agreement, AT&T has initiated arbitration proceedings to resolve this renewal dispute. However, given Amtrak's threats to evict AT&T at the end of the lease term or the possibility that Amtrak may lease the premises to another entity, AT&T also moves this Court for injunctive relief. Such relief is necessary to preserve the status quo by protecting AT&T's interests and ensuring that Amtrak is prohibited from interfering with AT&T's continued use and occupancy of the right-of-way pending resolution of the arbitration. In contrast to the harm that will be incurred by AT&T, Amtrak will suffer no prejudice from the imposition of injunctive relief for a relatively brief period of time because AT&T has offered to make the next lease payment of approximately $6 million on or before January 1, 2006.

For these reasons, AT&T's Motion should be granted.

012239.00616/21448119v.1

## II. STATEMENT OF FACTS

AT&T incorporates the facts set forth in AT&T's Motion and Complaint as if fully set forth herein.

## III. ARGUMENT

### A. Legal Standards For Issuance Of Temporary Restraining Order And Preliminary Injunction.

Federal Rule of Civil Procedure 65 governs the issuance of temporary restraining orders and preliminary injunctive relief. Fed.R.Civ.P. 65. It is well-established that this court may, pursuant to Rule 65, issue temporary and preliminary injunctive relief where the moving party demonstrates the following elements: (1) a substantial likelihood of success on the merits; (2) the moving party would suffer irreparable injury if the injunction is not granted; (3) an injunction would not substantially injure other interested parties; and (4) the public interest would be furthered by the injunction. Mova Pharm. Corp. v. Shalala, 140 F.3d 1060, 1066 (D.C. Cir. 1998).

It is particularly important for the moving party to demonstrate a substantial likelihood of success on the merits. Guam Indus. Servs. v. Rumsfeld, 383 F. Supp. 2d 112, 115 (D. D.C. 2005). Notwithstanding the importance of this factor, the four factors should be balanced on a sliding scale, and a party can compensate for a lesser showing on one factor by making a very strong showing on another factor. Guam Indus. Servs., 383 F.Supp.2d at 116 (citing CSX Transp., Inc. v. Williams, 406 F.3d 667, 670 (D.C. Cir. 2005)). "An injunction may be justified, for example, where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury." Guam Indus. Servs., 383 F.Supp.2d at 116 (citing CityFed Fin. Corp. v. Office of Thrift Supervision, 58 F.3d 738, 746 (D.C. Cir. 1995)).

AT&T satisfies each of these required elements. Accordingly, AT&T's Motion must be granted and Amtrak temporarily and preliminarily enjoined from taking any actions to interfere with AT&T's rights under the Lease Agreement pending resolution of the arbitration proceeding.

**B.  AT&T Is Entitled To A Temporary Restraining Order And Preliminary Injunction Because AT&T Satisfies the Elements Necessary For Injunctive Relief.**

As set forth more fully below, AT&T clearly meets the standard required for imposition of temporary and preliminary injunctive relief.

1. There is a substantial likelihood that AT&T will succeed on the merits of its argument that it did not forfeit its rights under the Lease Agreement.

AT&T will succeed on the merits of its argument that AT&T is entitled to renew the Lease Agreement. Courts applying the law of the District of Columbia[1] have held that despite a lessee's failure or delay in giving notice to renew an option in a lease, equitable relief may be warranted to prevent a forfeiture of the lessee's rights. Duncan v. G.E.W., Inc., 526 A.2d 1358, 1364 (D.C. 1987). A lessee's technical failure or delay in giving notice of renewal will not result in forfeiture of lease rights where: (1) the lessee's delay in renewing is slight; (2) the delay caused no prejudice to the lessor; and (3) the failure to grant such relief would cause the lessee unconscionable hardship. Duncan, 526 A.2d 1358, 1364. Furthermore, courts distinguish between mere neglect on the part of the lessee, in which case equitable relief is not available, and honest mistakes, where the intervention of equity is permitted. Id.

In Duncan, the lessee, G.E.W., failed to exercise lease renewal options prior to its renewal deadline because it misunderstood the renewal provisions in the lease agreement. After the expiration of the initial lease term, Duncan advised G.E.W. that it deemed the leases to have expired and intended to treat G.E.W. as a holdover tenant. Id. at 1359. G.E.W. immediately

filed a complaint seeking a declaratory judgment and equitable relief. G.E.W. also sought and obtained a temporary restraining order and preliminary injunction, both of which prohibited Duncan from interfering with G.E.W.'s continued occupancy pending the outcome of the litigation. Id.

The District of Columbia Court of Appeals upheld the trial court's finding that the lessee misinterpreted language in the renewal option and made an "understandable" mistake. The court also found that: (1) the delay was slight (oral notice – 17 days late; written notice – 23 days late); (2) the lessor had "every expectation" that the lessee would renew; (3) and the lessor did not detrimentally rely on the lessee's failure to timely renew. Id. at 1364-65. Under those circumstances, the court held that "forfeiture of the lease renewal options would be unconscionable." Id. at 1365. In addition, the court rejected the lessor's claim that the lessee was a sophisticated businessman that should be bound by the strict terms of the bargain. Instead, the court held:

> A forfeiture of the options in this case would cause unconscionable hardship to one party, which should never be the goal -- or the effect -- of any commercial transaction. To hold for [lessors] would be a regression to the days when hypertechnical legal arguments were relied upon to prevent fair and just results.

Id. at 1365.

Here, too, an unconscionable outcome would result were AT&T to forfeit its renewal right under the Lease Agreement. Indeed, as a threshold matter, AT&T is more deserving of relief than the plaintiff in Duncan because AT&T sent its notice of renewal to Amtrak before the renewal deadline. Amtrak simply did not receive the notice because of its own failure to notify AT&T regarding the change in its notice address, as required by the Lease Agreement. Thus, if

---

[1] Section 18.8 of the Lease Agreement provides that it "shall be governed and construed in accordance with the laws of the District of Columbia."

5

Amtrak insists on a "technical" approach to the obligations here, it was Amtrak's failure to fulfill its obligations regarding its change of address that led to Amtrak sending the notice to the "wrong" address. Indeed, Amtrak's failure to receive timely notice was the result of AT&T's reliance on the Lease Agreement itself and the assumption that Amtrak still accepted notices at the address identified in the Lease Agreement, given that AT&T had received no instructions to the contrary. See Gold Standard Enterprises, Inc. v. United Investors Mgt. Co., 538 N.E. 2d 636, 639 (Ill. App. 1989) (holding that lessee was entitled to specific performance where its notice was timely mailed but due to inadvertence, the notice was not actually delivered to the lessor because it was a "classic case for equitable relief"). In contrast, the plaintiff in Duncan made no attempts to renew its lease options until after its renewal deadline, yet the court still granted relief in its favor. Moreover, AT&T satisfies each of the necessary elements for equitable relief set forth in Duncan.

First, the delay between the July 5, 2005 renewal deadline and Amtrak's actual receipt of the renewal notice was slight. Indeed AT&T, upon learning through Amtrak's July 26, 2005 letter that Amtrak had apparently not received the renewal notice that AT&T mailed on May 18, 2005, promptly advised Amtrak that it had renewed the Lease Agreement. AT&T followed its verbal notice by faxing and emailing copies of the renewal notice to Amtrak on August 5, 2005, and August 15, 2005, respectively. Therefore, Amtrak received the notice at most only one month after the renewal deadline and still more than four months before the Lease Agreement was to terminate. Courts have granted equitable relief to lessees despite much longer delays. See Aikin v. Ocean View Investments Co., Inc., 935 P. 2d 992 (Haw. 1997) (holding that a four month delay was not unreasonably long within context of ten-year lease); Beltrone v. Danker,

6

643 N.Y.S. 2d 720 (1996) (granting equitable relief after a two-month delay). Here, the length of the initial term and renewal term of the Lease Agreement is twenty years.

Second, there has been no prejudice to Amtrak as a result of the delay. AT&T has consistently acted in a manner that indicated its intent to renew the Lease Agreement and has never taken any actions that might give the impression that AT&T intended anything other than to renew the Lease Agreement for another term. Indeed, it is AT&T's view that, based on the parties' long course of dealings concerning these right-of-way agreements and the importance of this particular right-of-way to AT&T's fiber optic communications system, Amtrak anticipated and believed that AT&T would continue to lease the premises and always acted in this manner. See Duncan, 526 A.2d 1358, 1364 (noting that lessor had "every expectation" that G.E.W. would exercise its renewal options). In addition, Amtrak has repeatedly expressed its desire that AT&T continue to lease the premises based on the parties' longstanding business relationship. Moreover, Amtrak received actual notice of AT&T's renewal over four months before the expiration of the initial term of the Lease Agreement and, to AT&T's knowledge, before Amtrak engaged in negotiations with other potential lessees. Thus, Amtrak has suffered no harm.

Third, forfeiture of AT&T's rights under the Lease Agreement would cause substantial hardship to AT&T. AT&T would be required to remove its communications equipment from the leased premises at great expense to AT&T and would risk interruptions in its telecommunication services, all because Amtrak failed to comply with its contractual obligation to give AT&T notice that its notice address had changed.

Under these facts and applying the standard set forth by the District of Columbia Court of Appeals in Duncan, there is a great likelihood that AT&T will succeed on the merits of its claim that a forfeiture of its lease rights is unwarranted and that AT&T should be entitled to renew the

Lease Agreement. AT&T satisfies the first, and most important, element required for injunctive relief.

      b. Injunctive relief is necessary to prevent immediate and irreparable harm to AT&T that cannot be compensated by damages.

This element also favors AT&T because absent an immediate temporary restraining order and preliminary injunctive relief, AT&T will likely suffer immediate and irreparable injury. In such circumstances, the right to a temporary restraining order is clear. Young v. Netherlands Owners, Inc., 306 F.Supp. 1282, 1285 (D.D.C. 1969) (finding that irreparable injury would result if disputed property were transferred to a third party during pendency of litigation); Duncan, 526 A.2d 1358 (granting temporary restraining order and preliminary injunction).

Here, Amtrak has notified AT&T that it has engaged in negotiations regarding leasing the right-of-way to another entity. Once the premises are leased to another entity, AT&T will be foreclosed from their use. See Young, 306 F.Supp. 1282; see also Simpson v. Lee, 499 A.2d 889, 896 (D.C. 1985) (finding that the probability that a third party would acquire rights to disputed property during the pendency of litigation presented an irreparable injury); DSP Venture Group, Inc. v. Allen, 830 A.2d 850, 851 (D.C. 2003) (granting application for a temporary restraining order in order to prevent defendant from selling the property to a third party). Therefore, a temporary restraining order and preliminary injunction are necessary to protect AT&T's interests pending resolution of the dispute in arbitration.

In addition to the significant and immediate hardship that would result from Amtrak's lease of the premises to another entity, AT&T will also suffer irreparable harm in the form of disrupted telecommunications services if it is forced to remove its equipment beginning on January 1, 2006. That would also result in irreversible damage to AT&T's reputation as a global

8

leader in the provision of high quality and reliable telecommunications services. As a result, it would be impossible to place a monetary value on the harm that AT&T will suffer.

Therefore, AT&T has established that it will suffer immediate and irreparable harm that cannot be monetarily compensated in the absence of injunctive relief against Amtrak.

   c. AT&T will suffer greater injury from this Court's denial of the Petition than Amtrak will from this Court's issuance of injunctive relief.

AT&T also satisfies this element because AT&T will suffer a much more significant injury if Amtrak is permitted to take steps to either remove AT&T's equipment or lease the premises to another entity. See Young, 306 F.Supp. 1282, 1285 (finding that possibility of injury to the defendant was substantially less than the irreparable injury that would result to the plaintiff if the defendant were allowed to transfer the property to another party while this action and another governmental proceeding were pending). AT&T has invested significant time and resources over the past twenty years to develop and enhance its fiber optic system between Washington, DC and Philadelphia, Pennsylvania. At this late juncture – with approximately three weeks left before the Lease Agreement expires – the lack of injunctive relief would also cause AT&T to suffer an interruption in its telecommunications services and deal a significant blow to AT&T's reputation and stature as a global leader in the provision of high quality and reliable telecommunications services. See Morgan Stanley DW Inc. v. Rothe, 150 F.Supp.2d 67, 78 (D.D.C. 2001) (finding that a balancing of the equities warranted an injunction because it would protect the moving party's goodwill, business reputation, methods of business operation, and contract rights).

Conversely, Amtrak's potential damage is exclusively monetary and it will suffer little or no injury from being required to maintain the status quo pending a resolution on the merits of

whether AT&T timely renewed the Lease Agreement. In fact, AT&T has already agreed to make a lease renewal payment of approximately $6 million on or before January 1, 2006. This amount represents the full amount that AT&T will be required to pay under the renewed Lease Agreement. Therefore, Amtrak will continue to receive lease payments in the amount it originally agreed to receive from AT&T. Thereafter, in the unlikely event the arbitrator finds that AT&T has forfeited its rights under the Lease Agreement, Amtrak will, upon returning this money to AT&T, still be entitled to lease the premises to another entity and thus enjoy revenue from the rail corridor. See Mooring Tax Asset Group, LLC, 2005 D.C. Super. LEXIS 5, *10 (D.C. May 10, 2005) (finding that the defendant did not suffer any legal harm in being restrained from conveying the property to a third party). Thus, Amtrak will continue to be paid and AT&T will still be subject to all of its obligations under the Lease Agreement pending final resolution of the arbitration.

On balance, therefore, AT&T will suffer greater harm than Amtrak if AT&T's Motion is denied.

        d. <u>The public interest would be served by injunctive relief.</u>

It is in the public's interest that injunctive relief be granted and AT&T be permitted to maintain uninterrupted telecommunication services to residential, commercial and governmental customers pending the outcome of this dispute in arbitration. In addition, the public interest would also be served in preventing a forfeiture of AT&T's rights to renew the Lease Agreement, especially considering that Amtrak seeks to evict AT&T when Amtrak failed to comply with its contractual obligation to notify AT&T that its notice address had changed. See Morgan Stanley DW Inc., 150 F.Supp.2d 67, 79 (noting that the public has no interest in "destroying contracts").

10

012239.00616/21448119v.1

As set forth above, AT&T satisfies every element necessary to obtain a temporary restraining order and preliminary injunctive relief and AT&T's Motion should be granted.

## IV. CONCLUSION

For the foregoing reasons, this Court should issue a temporary restraining order and preliminary injunction enjoining Amtrak interfering with AT&T's continued occupancy and use of Amtrak's right-of-way pending resolution of the arbitration.

Respectfully submitted,

**BLANK ROME LLP**

By: _____
WILLIAM R. MARTIN (Bar No. 465531)
ALAN M. FREEMAN (Bar No. 454693)
600 New Hampshire Avenue, N.W.
Washington, DC 20037
(202) 772-5800
(202) 572-8370 (facsimile)

Of Counsel

BLANK ROME LLP
Matthew J. Siembieda
Scott E. Coburn
One Logan Square
Philadelphia, PA 19103-6998
(215) 569-5500

Dated: December 12, 2005

012239.00616/21448119v.1